IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 11, 2012 Session

**STATE OF TENNESSEE v. MARY FAYE MORROW**

**Appeal from the Circuit Court for Franklin County**
**No. 20001     Thomas W. Graham, Judge**

**No. M2012-01534-CCA-R3-CD - Filed March 20, 2013**

Appellant, Mary Faye Morrow, entered a guilty plea without a complete agreement as to a recommended sentence to one count of theft of property valued at more than $60,000. Prior to sentencing, the parties reached an agreement as to the length of the eight-year sentence but requested a sentencing hearing on the issue of whether appellant should receive an alternative sentence. After a sentencing hearing, the trial court denied alternative sentencing and ordered appellant to serve her eight-year sentence in the Tennessee Department of Correction. It is from this judgment that she now appeals. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Robert S. Peters, Winchester, Tennessee, for the appellant, Mary Faye Morrow.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; James Michael Taylor, District Attorney General; and Steven M. Blount, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.  Facts

Appellant, Mary Faye Morrow, entered a guilty plea to one count of theft of property valued at more than $60,000. The State made the following offer of proof:

Your Honor, if we went to trial in this matter, our primary witnesses would consist of state auditors, TBI personnel, also personnel from the clerk's office, and Winchester city employees.

We believe the proof would show that during the time frame set out in the indictment, [appellant] held a position of finance director, for lack of a better term, with the City of Winchester. In the course of her employment, she would be responsible for the intake of various checks and monies into the city.

We believe the proof would show, Your Honor, that shortly after the new circuit court clerk was elected and took office, around that same time [appellant] retired from her position and a new finance director was brought into the city.

At that time, Your Honor, funds started appearing for the City of Winchester that appeared to be in excess of what they were use[d] to receiving, specifically, coming from the court system regarding fines and costs from two or three different courts from mainly drug offense[-]type cases. Inquiries were made by the City of Winchester to the Circuit Court Clerk's office wondering why are we getting all this money, you've been shorting us for years. At that point, they finally went back and looked at records and discovered there were checks that were being issued from the clerks' office to the City of Winchester that [were] not properly documented into the City of Winchester, and they called in the state – the TBI and the state auditors. They discovered one of several methods that money was, apparently, being misappropriated by [appellant.]

One specific method is [that] the clerk's office sends a check to the City of Winchester for funds where people have paid fines on drug offenses, and [appellant] was taking that check, cashing that check, or taking a portion of it in cash at a bank, and then instances getting a check back for a portion of that, depositing that, and pocketing the cash.

There would also be proof shown that there was manipulation of the books regarding the park service and specifically with funds dealing with the city pool. We believe that the auditors would present at trial at least three different methods where she was manipulating records and books to appropriate funds.

The State asked for a hearing to determine sentencing and restitution, which it believed would total approximately $200,000.

Prior to the date set for the sentencing hearing, the parties reached an agreement setting restitution at $226,956.31. They also agreed that appellant should be sentenced to the minimum term of eight years as a Range I offender but left the determination of whether appellant should receive an alternative sentence to the trial court.

At the sentencing hearing, appellant made a statement by allocution. She acknowledged the suffering, humiliation, and embarrassment that her actions caused the City of Winchester. She also apologized for violating her position of trust.

Appellant's husband, James Tom Morrow, testified that he first learned about the crimes appellant committed on the day she was indicted. Because he and appellant kept separate checking accounts, he would not have known if she had more money than expected in her account. Mr. Morrow testified that they did not have any unusually difficult financial times and that they always tried to help other people in that respect. He further stated that when they built their house in 1999, he wrote all of the checks from his account, and appellant did not contribute any funds from her account. Their vehicles were not extravagant. Mr. Morrow gave appellant the few items of jewelry that she owned. They did not take expensive vacations. They had not incurred major medical bills, and neither of them gambled. Mr. Morrow stated that they had never lived an extravagant lifestyle and that he did not know what appellant did with the stolen money.

Mr. Morrow had formulated a payment plan for restitution, which involved several lump-sum payments as well as monthly payments over a two-year period. They would use appellant's social security benefits and retirement toward payment of restitution.

On cross-examination, Mr. Morrow acknowledged that appellant was responsible for paying household bills from her checking account and that he "could have" unwittingly benefitted from the proceeds of the theft. He admitted that he had approximately $400,000 in a 401(k) retirement account and that they owned four vehicles and a Winnebago with no debt associated with them. He also stated that they owed approximately $13,000 on their home, which was worth almost $280,000. Mr. Morrow acknowledged that the City of Winchester continued to pay appellant's health insurance premiums, which would not have occurred if she had been terminated for cause.

At the conclusion of the hearing, the trial court denied alternative sentencing and stated:

Well, the worst thing about these kind of cases is the amount that is taken far dwarfs most all other thefts and things that we see, and we send people to the penitentiary for years all the time for, you know, stealing a car or something like that. Then[,] if we get an embezzlement situation, we don't look at it the same way for some reason or other. I'm not sure how we can justify that. There's no question that this particular issue was not a one time bad judgment thing. It lasted literally a lifetime[,] really. We don't know how far beyond, but we know it just didn't start on the day the statute of limitations ran.

. . . .

[T]here was no real reason for it to happen. I mean, not that anything justifies [it], but there's no known basis of great need that might push a person to do something bad, that they would think they had no other option, because they couldn't pay medical bills or something like that. None of that happened. This was a normal life with two breadwinners and nothing other than just plain old greed would be the reason to take it.

. . . .

So[,] it's a difficult case to deal with [on] a human basis, but on a justice basis, looking at the status of the statute, which says various things about confinement, and it does say confinement would be necessary to avoid depreciating the seriousness of the offense. That rings pretty strong in my mind, and it's particularly well[-]suited to provide an effective deterrent to others likely to do similar offenses.

Everyday folks work in cities and governments and offices where they handle cash, and everyday there's a chance to slide a little under the table, and maybe not get caught, and so that's always something that, I guess, we have to be concerned about when we talk about embezzlement cases. That if you can show that it does not pay, maybe that'll help some if you believe in, you know, a deterrence. Sometimes people don't fully believe in deterrence. They think people are just going to do it whether there's a deterrent out there or not, but I think deterrence does have some weight.

And then, of course, every defendant shall be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense.

-4-

Well, I think the serious[ness] of the offense is great, and that anything less than just the eight-year sentence would be something that would not express the seriousness of the offense. I don't think alternative sentencing would be in the best interest here. So we will sentence [appellant] to eight years in the state penitentiary. She'll be eligible for release on standard 30 percent, which means she won't be there eight years unless she messes up.

In its written order, the trial court found: (1) appellant's illegal activities spanned several years, "clearly evincing a 'long history of criminal conduct;'" (2) breaching the trust of the citizens of Winchester for such a long duration was a "particularly serious offense;" and (3) confinement was necessary to "protect society by restraining a defendant who has a long history of criminal conduct" and to "avoid depreciating the seriousness of the offense." *See* Tenn. Code Ann. § 40-35-103(1)(A), (B) (2010). The court stated that after reviewing the sentencing alternatives, a sentence of confinement was the "least severe measure necessary to achieve the purpose for which the sentence is imposed and that alternatives to incarceration . . . cannot be justified." *See id.* § 40-35-103(4).

## II. Analysis

### 1. Standard of Review

In this case, the parties agreed upon the length of appellant's sentence. The only determination for the trial court was whether to order some form of alternative sentence. As stated above, the trial court ordered appellant to serve her full sentence in the Tennessee Department of Correction as a Range I offender at thirty percent release eligibility.

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b) (2010). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4) (2010).

A trial court should base its decision regarding alternative sentencing on the following considerations:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses;

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2010).

The appropriate standard of review on appeal when an accused challenges the length and manner of service of a sentence is abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Appellant contends that the trial court erred in denying her alternative sentencing. In her brief to this court, she asserts that the trial court sentenced her to confinement "without considering sentencing alternatives." While the trial court did not address sentencing alternatives in court at the conclusion of the hearing, the sentencing order filed by the trial court clearly contradicts this assertion.

We must begin our analysis with the proposition that appellant is not a "favorable candidate" for probation because she pleaded guilty to a Class B felony. *See* Tenn. Code Ann. § 40-35-102(6) (2010) ("[A]n especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary."). Moreover, the trial court's sentencing order demonstrates that it considered the evidence presented at the hearing, arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct involved, and statements made by appellant on her own behalf. Tenn. Code Ann. §§ 40-35-

210(b)(1), (3), (4), (7) (2010). While the trial court did not address appellant's potential for rehabilitation, the trial court's "less comprehensive" findings did not result in an abuse of discretion. *Bise*, 380 S.W.3d at 706.

The trial court properly denied an alternative sentence to an individual who stole more than $200,000 from the City of Winchester over a period of several years.[1] We conclude that the trial court did not abuse its discretion in ordering appellant to serve her sentence in confinement.

## CONCLUSION

Upon our review of the record, the parties' briefs, arguments of counsel, and the applicable law, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE

---

[1] The trial court was properly concerned because the theft by appellant apparently had been going on for so many years that the applicable statute of limitations precluded prosecution or restitution for a significant portion of the total theft.